IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

DAVID MONCLA,                          )
                                       )
                    Plaintiff,         )      **CIVIL ACTION**
                                       )
v.                                     )      No.  09-3137-MLB
                                       )
ROBERT KELLEY, ROBERT SAPIEN, and      )
RUSSELL STENSENG,                      )
                                       )
                    Defendants.        )
_____)

## MEMORANDUM AND ORDER

Before the court are the following:

1)  Plaintiff's motion for conflict of interest determination and memorandum in support (Doc. 50). Defendants' response (Doc. 53) and plaintiff's reply (Doc. 55).

2)  Plaintiff's motion to strike defendants' response to plaintiff's motion for conflict of interest as untimely (Doc. 56) and memorandum in support (Doc. 57). Defendants' response (Doc. 61) and plaintiff's reply (Doc. 62).

3.  Defendants' motion for summary judgment (Doc. 51) and memorandum in support (Doc. 52). Plaintiff's response (Doc. 54) and defendants' reply (Doc. 58).

## I.   MOTIONS FOR CONFLICT OF INTEREST DETERMINATION AND TO STRIKE

### 1. Facts

On July 20, 2010, plaintiff sent defendant Kelley, through his counsel Kimberly Lynch, a proposed settlement. Plaintiff requested that Ms. Lynch share his offer with defendant Kelley and arrange communications between the two. Ms. Lynch took the settlement offer

and shared it with the representatives of the Kansas Department of Corrections ("KDOC"). Plaintiff contends that Ms. Lynch's multiple representation of defendants is inconsistent with her ethical obligations to defendant Kelley.

On September 21, 2010, plaintiff filed his motion to determine conflict of interest. Defendants were to respond by October 4. Due to a clerical mistake in calendaring, defendants did not respond until October 5. Plaintiff moves to strike defendants' response as untimely.

## 2. Analysis

Although defendants' response was untimely, it was only one day late. There was no bad faith on the part of defendants' counsel and plaintiff has not shown any prejudice as a result of the one-day delay. Therefore, the court will consider defendants' response and plaintiff's motion to strike is denied.

Moving to his motion to determine a conflict of interest, it does not appear that plaintiff is arguing that Ms. Lynch owes any loyal or confidential obligation to him. Nor is there any authority to support such an argument. The fact that plaintiff wrote Ms. Lynch a letter to share with her client does not impose any ethical obligation on Ms. Lynch with respect to plaintiff.

Any ethical obligation owed by Ms. Lynch is to defendants as her clients. No defendant claims that Ms. Lynch has a conflict of interest because she went to representatives of KDOC with plaintiff's settlement letter instead of directly to defendant Kelley. Plaintiff does not have standing to raise such an argument on behalf of defendants.

The court agrees with defendants that plaintiff's motion is frivolous and improper and it is denied.

## II.   MOTION FOR SUMMARY JUDGMENT

### 1.  Facts

Plaintiff is an inmate incarcerated at the El Dorado Correctional Facility ("EDCF"). Defendant Sapien was plaintiff's Unit Team Manager. Defendant Stenseng was the Disciplinary Hearing Administrator at EDCF. Defendant Kelley was a Disciplinary Hearing Officer at EDCF and heard plaintiff's disciplinary case number 07-13-198.

<u>Incident</u>

On March 21, 2007, plaintiff went to EDCF's health care clinic claiming that he hit his lower lip on the bathroom sink when he passed out in his cell. When plaintiff was released from the clinic, Corrections Specialist I ("CSI") Gardner and Corrections Officer II ("COII") Greicol administered a urinary analysis drug test ("UA"). Plaintiff's UA tested positive for amphetamines. On March 27, plaintiff received a disciplinary report reflecting his positive UA.

On March 28, plaintiff signed a drug test waiver and agreement requesting that a confirmation test be performed on his original urine sample. Plaintiff also signed a consent for release of confidential medical information, which enabled Correct Care Solutions to provide KDOC a list of prescription medications that plaintiff was taking at the time the UA was administered. On the release, plaintiff listed that he had taken two additional over-the-counter medications, Pseudophedrine and Chlorphenamine, on the day the UA was administered. Plaintiff was also taking Tenormin, Clindamycin, Tylenol, and

Naprosyn.

On April 2, EDCF received the results of the confirmation test, which confirmed that plaintiff's urine sample was positive for amphetamines. That same day, plaintiff was also provided with notice that his disciplinary hearing case number 07-03-198 would be heard on April 4 at approximately 9:00 a.m.

Prior to April 4, plaintiff submitted a request to call two witnesses, Dr. McNickle and COII Greicol, at his disciplinary hearing. Plaintiff claimed that Dr. McNickle would have testified as to all the medications and injections that plaintiff was given on the night of the UA. Plaintiff claimed that COII Greicol would have testified that plaintiff was administered and passed a field test, part of which was for amphetamines.

On April 4, but before plaintiff's disciplinary hearing had started, Sapien saw Stenseng in the hall. Sapien asked Stenseng about plaintiff's UA results. Stenseng informed Sapien that plaintiff had tested positive for amphetamines. Based on their conversation, Sapien believed that plaintiff's disciplinary hearing had already taken place and that plaintiff had been found guilty. Sapien then changed plaintiff's incentive level from a Level 3 to a Level 1 and informed plaintiff's employer. At some point, plaintiff was terminated from his job.

## First Disciplinary Hearing

At the disciplinary hearing, plaintiff testified that he passed out and hit his lower lip. When he was taken to the clinic to be treated, Dr. McNickle gave him medication. Plaintiff also testified that he had taken three over-the-counter medications, Sudorin, Onset

-4-

Forte, and Pseudophedrine, that day prior to his UA.

After plaintiff finished testifying, the canteen supervisor, Mr. White was sworn. Mr. White testified that the canteen quit selling Sudorin, Onset Forte, and Pseudophedrine over two years prior to plaintiff's disciplinary hearing.

Based on plaintiff's and Mr. White's testimony, the disciplinary report, and laboratory results of the confirmation drug test, Kelley denied plaintiff's request to call Dr. McNickle and COII Griecol as irrelevant. Kelley found plaintiff guilty of using stimulants in violation of K.A.R. 44-12-312 based on the evidence listed above. Plaintiff was sanctioned to disciplinary segregation for 30 days, three months loss of good time credit, and a $20 fine. Plaintiff was also transferred from the U dorm to the East A cell house.

On April 10, plaintiff was given a copy of the disposition and hearing record. On April 23, plaintiff appealed to the Secretary of Corrections. Plaintiff's appeal was reviewed and Kelley's decision was upheld because it was in substantial compliance with departmental procedure and based on some evidence.

Plaintiff then filed a petition for writ of habeas corpus in the Butler County District Court regarding his disciplinary hearing. On March 30, 2009, a hearing was held. KDOC agreed to provide plaintiff with a new disciplinary hearing where he could call his requested witnesses. However, KDOC did not admit to any wrongdoing and no rulings were made regarding plaintiff's constitutional claims

### Second Disciplinary Hearing

On April 16, 2009, plaintiff was informed that a second disciplinary hearing was scheduled for April 20 at 10:30 a.m. At his

second hearing, plaintiff called Dr. McNickle and CSI Maier. The disciplinary hearing officer, Officer Galloway, found that there was some evidence to support Kelley's guilty finding based on the laboratory reports. However, due to the amount of time that had passed from the incident to the second disciplinary hearing, Officer Galloway was unable to render a decision of guilt or innocense. Officer Galloway dismissed the case.

As a result of the dismissal, plaintiff was reimbursed $20. Plaintiff is not eligible for good time credits and consequently, none were ever removed or restored. Plaintiff had already completed his 30-day confinement. On May 6, 2009, plaintiff was provided with a copy of the disposition of the second disciplinary hearing.

On May 22, the Butler County District Court dismissed plaintiff's habeas action finding that plaintiff was given all the relief he was owed after KDOC provided a second disciplinary hearing allowing him to call his requested witnesses and ultimately dismissing the case. Plaintiff filed the current case in this court on June 30, 2009.

### 2. Summary Judgment Standard

Before analyzing defendants' motion for summary judgment, the court notes plaintiff is not represented by counsel. It has long been the rule that <u>pro</u> <u>se</u> pleadings, including complaints and pleadings connected with summary judgment, must be liberally construed. <u>See</u> <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991); <u>Hill v. Corrections Corp. of America</u>, 14 F. Supp.2d 1235, 1237 (D. Kan. 1998). This rule requires the court to look beyond a failure to cite proper legal authority, confusion of legal theories, and poor syntax or

sentence construction.  See Hall, 935 F.2d at 1110.  Liberal construction does not, however, require this court to assume the role of advocate for the pro se litigant.  See id.  Plaintiff is expected to construct her own arguments or theories and adhere to the same rules of procedure that govern any other litigant in this district. See id.; Hill, 14 F. Supp.2d at 1237.  Additionally, the court need not accept as true plaintiff's conclusory allegations because no special legal training is required to recount the facts surrounding alleged injuries.  See Hill, 14 F. Supp.2d at 1237.  Thus, the court is required to accept as true only plaintiff's well-pleaded and supported factual contentions.  See id.  In the end, plaintiff's pro se status, in and of itself, does not prevent this court from granting summary judgment.  See Northington v. Jackson, 973 F.2d 1518, 1521 (10th Cir. 1992).

The usual and primary purpose of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  An issue is "genuine" if sufficient evidence exists on each side "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim."  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998) (citations omitted); see also Adams v. American Guarantee & Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000) (citing

*Adler*).  The mere existence of some factual dispute will not defeat an otherwise properly supported motion for summary judgment because the factual dispute must be <u>material</u>.  <u>See Renfro v. City of Emporia</u>, 948 F.2d 1529, 1533 (10th Cir. 1991).

Defendant initially must show both an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  <u>See Adler</u>, 144 F.3d at 670.  Because plaintiff bears the burden of proof at trial, defendant need not "support [its] motion with affidavits or other similar materials <u>negating</u> [plaintiff's]" claims or defenses. <u>Celotex</u>, 477 U.S. at 323 (emphasis in original).  Rather, defendant can satisfy its obligation simply by pointing out the absence of evidence on an essential element of plaintiff's claim.  <u>See Adler</u>, 144 F.3d at 671 (citing <u>Celotex</u>, 477 U.S. at 325).

If defendant properly supports its motion, the burden then shifts to plaintiff, who may not rest upon the mere allegation or denials of her pleading, but must set forth specific facts showing that there is a genuine issue for trial.  <u>See Mitchell v. City of Moore</u>, 218 F.3d 1190, 1197-98 (10th Cir. 2000).  In setting forward these specific facts, plaintiff must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."  <u>Adler</u>, 144 F.3d at 671.  If the evidence offered in opposition to summary judgment is merely colorable or is not significantly probative, summary judgment may be granted.  <u>See Cone v. Longmont United Hosp. Ass'n</u>, 14 F.3d 526, 533 (10th Cir. 1994).  Plaintiff "cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."  <u>Conaway v. Smith</u>, 853 F.2d

-8-

789, 793 (10th Cir. 1988).  Put simply, plaintiff must "do more than

simply show there is some metaphysical doubt as to the material

facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S.

574, 586-87 (1986).

Certain local rules further govern the presentation of facts and

evidence.  Local Rule 56.1 requires the movant to set forth a concise

statement of material facts.  D. Kan. Rule 56.1.  Each fact must

appear in a separately numbered paragraph and each paragraph must

refer with particularity to the portion of the record upon which the

defendant relies.  <u>See</u> <u>id.</u>  The opposing memorandum must contain a

similar statement of facts.  Plaintiff must number each fact in

dispute, refer with particularity to those portions of the record upon

which he relies and, if applicable, state the number of the

defendants' fact that he disputes.  The court may, <u>but is not

obligated to</u>, search for and consider evidence in the record that

would rebut the defendant's evidence, but that plaintiff has failed

to cite.  <u>See</u> <u>Mitchell</u>, 218 F.3d at 1199; <u>Adler</u>, 144 F.3d at 672.  All

material facts set forth in the statement of defendant shall be deemed

admitted for the purpose of summary judgment unless specifically

controverted by the statement of plaintiff.  <u>See</u> <u>id.</u>; <u>Gullickson v.

Southwest Airlines Pilots' Ass'n</u>, 87 F.3d 1176, 1183 (10th Cir. 1996)

(applying local rules of District of Utah).  A standing order of this

court also precludes drawing inferences or making arguments within the

statement of facts.

The parties need not present evidence in a form that would be

admissible at trial, but the content or substance of the evidence must

be admissible.  <u>See</u> <u>Thomas v. Int'l Bus. Machs.</u>, 48 F.3d 478, 485

(10th Cir. 1995) (internal quotations and citations omitted). For example, hearsay testimony that would be inadmissible at trial may not be included. See Adams, 233 F.3d at 1246. Similarly, the court will disregard conclusory statements and statements not based on personal knowledge. See Cole v. Ruidoso Mun. Schs., 43 F.3d 1373, 1382 (10th Cir. 1994) (regarding conclusory statements); Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995) (requiring personal knowledge). Finally, the court may disregard facts supported only by references to documents unless the parties have stipulated to the admissibility of the documents or the documents have been authenticated by and attached to an affidavit meeting the requirements of Rule 56(e). See Fed. R. Civ. P. 56(e); D. Kan. Rule 56.1; 10A Charles Alan Wright, et al., Federal Practice and Procedure § 2722 (2d ed. 1983) (footnotes omitted).

In the end, when confronted with a fully briefed motion for summary judgment, the court must determine "whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If sufficient evidence exists on which a trier of fact could reasonably find for the plaintiff, summary judgment is inappropriate. See Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677, 684 (10th Cir. 1991).

### 3. Analysis

#### 1983 Claims

When law enforcement officers abuse their power, suits against them allow those wronged an effective method of redress. See Anderson

-10-

v. Creighton, 483 U.S. 635, 638 (1987) (citing Harlowe v. Fitzgerald, 457 U.S. 800, 814 (1982)).  Pursuant to 42 U.S.C. section 1983, any person who "under color of . . . [law] . . . subjects, or causes to be subjected, . . . any [person] . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  Section 1983 was enacted to provide protections to those persons wronged by the misuse of power.  While the statute itself creates no substantive civil rights, it does provide an avenue through which civil rights can be redeemed. See Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir. 1995).  To state a claim for relief in a section 1983 action, plaintiff must establish that he was (1) deprived of a right secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed under color of state law.  See Am. Mfr's. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).  Defendants stipulate that they were acting under color of state law at all times relevant to plaintiff's complaint.  (Doc. 52 at 11).

### Eleventh Amendment Immunity

"The Eleventh Amendment provides: 'The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.'" U.S. Const. Amend. XI; Meade v. Grubbs, 841 F.2d 1512, 1524 -25 (10th Cir. 1988).  The Eleventh Amendment also bars suits against the state, its agencies, and officers acting in their official capacities from the state's own citizens.  Meade, 841 F.2d at 1525.

In his complaint, plaintiff names defendants in their official

and private capacities. However, he has clarified in his response that he is not seeking monetary damages against defendants in their official capacity. (Doc. 54 at 29). Summary judgment is granted in favor of defendants on plaintiff's official capacity claims.

Qualified Immunity

While section 1983 permits the possible vindication of a plaintiff's rights, non-meritorious suits exact a high cost upon society and law enforcement personnel. See Anderson, 483 U.S. at 638. Indeed, the Supreme Court and the Tenth Circuit have recognized these suits may unduly interfere with the discharge of discretionary duties due to the constant fear civil litigation and potential monetary damages. See Harlowe v. Fitzgerald, 457 U.S. 800, 814 (1982); Wilson v. Stock, 52 F.3d 1547, 1552 (10th Cir. 1995). "[T]o submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." Horstkoetter v. Department of Public Safety, 159 F.3d 1265, 1277 (10th Cir. 1998) (internal quotations omitted) (citing Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949)).

In order to balance these competing interests, government officials performing discretionary duties are afforded qualified immunity shielding them from civil damages liability. Pearson v. Callahan, 129 S. Ct. 808, 815, 172 L. Ed.2d 565 (2009). Qualified immunity protects these officials unless their conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." Id.; Baptiste v. J.C. Penney

-12-

Co., Inc., 147 F.3d 1252, 1255 (10th Cir. 1998). The defense not only provides immunity from monetary liability, but perhaps more importantly, from suit as well.[1] See Horstkoetter, 159 F.3d at 1277.

When a defendant claims qualified immunity, the plaintiff bears the burden of (1) coming forward with sufficient facts to show that the defendant's actions violated a constitutional right and (2) demonstrating the right allegedly violated was "clearly established" at the time the conduct occurred. Pearson, 129 S. Ct. at 815-6. As noted in Pearson, courts are no longer required to follow the two-step sequence mandated by Saucier v. Katz, 533 U.S. 194 (2001). Id. at 818. "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id.

If a plaintiff successfully thwarts a defendant's qualified immunity defense, the ordinary summary judgment burden returns to the defendant to show no material issues of fact remain that would defeat the claim of qualified immunity. See Mick v. Brewer, 76 F.3d 1127, 1134 (10th Cir. 1996). This standard requires a defendant to show there are no disputes of material fact as to whether his conduct was objectively reasonable in light of clearly established law and the information known to the defendant at the time. See id. Even if a plaintiff is able to withstand summary judgment, the defendant is

_____

[1] One of the purposes of qualified immunity is to "protect public officials from the 'broad-ranging discovery' that can be peculiarly disruptive of effective government." Anderson, 483 U.S. at 646 n.6.

nonetheless able to reassert the defense of qualified immunity at trial. See Gossett v. Oklahoma Bd. of Regents for Langston University, 245 F.3d 1172, 1181 n.5 (10th Cir. 2001).

Fifth Amendment

In his complaint, plaintiff alleges that defendants violated his Fifth Amendment Due Process rights. Defendants respond that the Fifth Amendment does not apply to state actions.

The Fifth Amendment establishes that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Courts agree that the Fifth Amendment guarantees protection against actions by the federal government. Smith v. Kitchen, 156 F.3d 1025, 1028 (10th Cir. 1997); Williams v. Board of County Com'rs of Johnson County, KS, No. 06-2055-KHV, 2006 WL 2385342, *3 (D. Kan. Aug. 17, 2006).

Defendants are state actors. The Fifth Amendment protections are not applicable and there was no constitutional violation.

Fourteenth Amendment

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. Prisoners are entitled to limited liberty interests as a result of their confinement. See Sandin v. Conner, 515 U.S. 472, 485 (1995). (stating that "'[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system[]'"). States may create certain liberty interests that are protected by the Due Process Clause. Id. at 484. "But these interests will be generally limited

to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. (internal citations omitted).

Discipline by prison officials as a result of prisoner misconduct may deprive a prisoner of a liberty interest. When this occurs, the Due Process Clause requires that the prisoner receives "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Kucera v. Terrell, No. 06-3208-RDR, 2006 WL 2349620, *3 (D. Kan. Aug. 11, 2006). However, not every punishment deprives a prisoner of a property or liberty interest because it is not atypical or a significant hardship in relation to ordinary prison life.

### A. Segregation

Sandin held that discipline, which includes solitary confinement, is expected as a result of a prison sentence.[2] 515 U.S. at 485-86. In other words, solitary confinement does not necessarily impose atypical and significant hardships on plaintiff in relation to ordinary incidents of prison life. The court considers "the

---

[2] In Sandin, the Court considered whether an inmate's disciplinary segregation for 30 days was atypical or a significant hardship. 515 U.S. at 486. The Court compared the degree and duration of the inmate's segregation with other disciplinary actions and found that it "mirrored those conditions imposed upon inmates in administrative segregation and protective custody." Id. at 486.

conditions of confinement, including both the duration and degree of restrictions of that confinement, as compared with other inmates." Hill v. Fleming, No. 04-1166, 2006 WL 856201, *4 (10th Cir. Apr. 4, 2006).

The Tenth Circuit also considers four relevant factors when determining whether confinement violates a liberty interest: "(1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement ...; and (4) the placement is indeterminate ...." Estate of DiMarco v. Wyoming Dept. of Corrections, Div. of Prisons, 473 F.3d 1334, 1342 (10th Cir. 2007). Nonetheless, the court is mindful that its role is not to second-guess the role of prison officials. Id.

Plaintiff was sanctioned to disciplinary segregation for 30 days as a result of a positive UA for amphetamines. K.A.R. 44-12-312. Disciplinary segregation serves a legitimate penological interest. Plaintiff provides no evidence of being subject to extreme conditions. Indeed, plaintiff makes no discernable complaint about the circumstances of his confinement in disciplinary segregation. The 30-day confinement did not increase plaintiff's sentence and it was not indeterminate.

The court finds that the 30-day disciplinary segregation imposed on plaintiff as punishment was not excessive in degree or duration. The Tenth Circuit has held that longer segregation periods were not atypical or significant. See Hill, 2006 WL 856201 at 4 (reviewing various decisions from the Tenth Circuit and other circuits). Therefore, plaintiff was not deprived of any liberty interest and no

constitutional violation occurred.

## B.  Good Time Credit

Plaintiff was sanctioned to three months loss of good time credits.  Kansas inmates have a liberty interest in good time credits and procedural due process requirements are required.  <u>Grossman v. Bruce</u>, 447 F.3d 801, 804 (10th Cir. 2006).

In plaintiff's case, he is not subject to good time credit based on his conviction.[3]  Even though plaintiff was ordered to lose good time credit as a result of the guilty finding in the first disciplinary hearing, in reality, that was not an applicable punishment.  Plaintiff did not lose any good time credits and had no liberty interest at stake.

## C.  $20 Fine

Plaintiff alleges that he has a protected property interest in his prison account and the interest that accrued during the two years that the $20 was removed.  Defendants do not dispute that plaintiff has a property interest in his monetary account.  Instead, they argue that plaintiff was reimbursed the $20 and the two-year period it was absent is not atypical or significant.

The Tenth Circuit has indicated that a monetary fine can give rise to a property interest protected by the Due Process Clause.  <u>See</u> <u>Anderson v. Cunningham</u>, No. 08-1349, 2009 WL 808301, *4 (10th Cir. Mar. 30, 2009) (noting that with the exception of the fine, the inmate's complaint did not identify a protected property or liberty interest); <u>Jones v. Cowley</u>, Nos. 91-6271, 91-6283, 1991 WL 252667, *2

---

[3] Plaintiff was found guilty of Murder in the First Degree, a class A felony, and is not eligible to earn good time credits.

(10th Cir. Nov. 26 ,1991).

On March 28, 2007, plaintiff signed a drug test waiver and agreement for confirmation testing of the original urine sample. In the waiver, plaintiff agreed to pay $20 for the costs of the additional test in the event that it came back positive. (Doc. 52-1 at 5). On April 2, 2007, the results of plaintiff's confirmation test confirmed that his original urine sample tested positive for amphetamines. (Doc. 52-1 at 4).

After his first disciplinary hearing, plaintiff was sanctioned a $20 fine for the testing and it was removed from his account. Following his second disciplinary hearing, a determination as to guilt could not be made and the charges against plaintiff were dismissed. Plaintiff was reimbursed $20.

The court finds that plaintiff does not have a property interest in the $20 or any interest that accrued during the two-year period. Plaintiff agreed to pay the $20 when he requested a confirmation test. The confirmation test was not mandatory and plaintiff was aware that he would be required to pay $20 cost in the event that the test was positive. Essentially, the $20 was not a sanction as a result of the disciplinary hearing, but a consequence of plaintiff's actions in requesting additional testing. Therefore, no constitutional violation occurred.

**D.  Prison Employment**

Either prior to or subsequent to his first disciplinary hearing, plaintiff was terminated from his prison employment.

Plaintiff does not have a protected property or liberty interest in his prison employment. <u>Anderson</u>, 2009 WL 808301 at 4 (citing

<u>Penrod v. Zavaras</u>, 94 F.3d 1399, 1407 (10th Cir. 1996)).

Plaintiff was not deprived of any protected interest when his employment was terminated. Therefore, no constitutional violation occurred.

### E.    Housing Placement

Prior to his first disciplinary hearing, plaintiff's incentive level was changed from a level 3 to a level 1. Consequently, plaintiff was transferred from the U Dorm, which is an honor dorm, to the East A cell house.

Generally speaking, there is no protected liberty interest in a prison classification. <u>Lile v. Simmons</u>, 143 F. Supp. 2d 1267, 1274 (D. Kan. 2001). The Kansas Supreme Court has held that "[t]he restrictions imposed at Level I do not impose an atypical or significant hardship on the petitioner in relation to the ordinary incidents of prison life." <u>Love v. McKune</u>, No. 01-3332, 2002 WL 126997, *1 (10th Cir. 2002) (quoting <u>Stansbury v. Hannigan</u>, 265 Kan. 404, 960 P.2d 227, 230 (1998)).

Plaintiff has no protected property or liberty interest in a specific incentive level. Plaintiff was not deprived of due process when his incentive level was changed prior to his disciplinary hearing.

### F.    Disciplinary Appeals Process

Plaintiff alleges that defendant Stenseng had ex parte conversations and knowingly provided false information to the disciplinary appeals officer.

There is no due process right to an appeal from a disciplinary hearing. <u>Lowe v. Sockey</u>, No. 00-7109, 2002 WL 491731, *7 (10th Cir.

Apr. 2, 2002).

Plaintiff does not have a protected liberty interest in an appeal. No specific appeals process is required by the constitution and no violation occurred.

### G.   Fabrication

It appears that plaintiff is asserting a new claim that "defendants fabricated a disciplinary scenario to avoid liability for injury to plaintiff by EDCF medical staff." (Doc. 58-1 at 16). Plaintiff does not raise this claim in his complaint and the court will not consider it now. See Blevins v. Werholtz, No. 09-3033-SAC, 2009 WL 539913, *6 (D. Kan. Mar. 4, 2009) ("In order to add claims that were not raised in the original complaint, a plaintiff must file an Amended Complaint" pursuant to Fed. R. Civ. P. 15.) Defendants are entitled to summary judgment on any claim of fabrication on this issue.

The court has found no constitutional violation for plaintiff's due process rights under the Fifth and Fourteenth Amendments. Summary judgment is granted in favor of defendants on all of plaintiff's § 1983 claims against defendants in their individual capacity.

## III. CONCLUSION

For the reasons stated above, plaintiff's motions for conflict of interest determination (Doc. 50) and to strike defendants' response as untimely (Doc. 56) are denied. Defendants' motion for summary judgment (Doc. 51) is granted. The clerk is directed to enter judgment for defendants pursuant to Rule 58.

A motion for reconsideration of this order is not encouraged. The standards governing motions to reconsider are well established.

A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this __18th__ day of February 2011, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE